Peelle *v.* The State, *ex rel.* Hipes.

No. 13,271.

### PEELLE *v.* THE STATE, EX REL. HIPES.

GUARDIAN AND WARD.—*Appointment of Guardian.*—*Irregularity.*—*Bond.*— An irregularity in the appointment of a guardian is not available as a defence in an action upon his bond. Section 2516, R. S. 1881.

SAME.—*Conversion.*—*Statute of Limitations.*—In an action by a ward upon his guardian's bond for money converted, the statute of limitations is only available as a defence from the date of the conversion and not from the date of prior breaches of duty.

SAME.—*Guardian not a "Public Officer."*—A guardian is not a public officer within the meaning of the second subdivision of section 293, R. S. 1881, limiting the time for the bringing of actions upon the bond of such an officer to five years.

SAME.—*Case Doubted.*—It is questionable whether the decision in *Jones* v. *Jones*, 91 Ind. 378, is not unsound in so far as it holds that an action on a guardian's bond must be brought within six years after the cause of action accrues.

SAME.—*Accounting.*—*Insufficient Answer of Settlement.*—To a complaint upon a guardian's bond, an answer that all sums of money received by the guardian were paid to the relator " after his arrival at twenty-one years of age, by his guardian, and were paid out to others for the relator's schooling and board," is bad, as it neither shows a payment of the entire sum to the ward nor a right to pay money out for the purposes. mentioned.

SAME.—*Removal from State.*—*Remedy of Ward.*—Where a guardian removes from the State during the minority of his ward, the failure of the latter to then institute an action upon his bond does not bar or affect the ward's right to subsequently sue upon a cause of action accruing to him by the guardian's failure to account when he becomes of age.

SAME.—*Penalty of Bond.*—*Mistake.*—An error of judgment made by the county clerk in fixing the penalty of a guardian's bond at too large a sum, is a mistake of law and can not be corrected by the courts.

SAME.—*Estoppel of Obligors.*—Where the obligors in a guardian's bond have treated the bond as valid, and have permitted the guardian to receive a large sum of money without questioning the amount of the penalty, they can not afterwards have the penalty reduced to the injury of the ward.

SAME.—*Several Judgment Against Sureties.*—In an action upon a joint and several guardian's bond, a failure to obtain service upon the principal does not defeat the right to a judgment against the sureties.

SAME.—*Measure of Damages.*—*Interest.*—*Penalty.*—Where the breach relied on is the failure of the guardian to account to the ward when he became of age, and it does not appear that the guardian actually received and appropriated interest, the measure of recovery, as against the sureties, at least, is the amount due, including simple interest, to which the court may, if it deems it proper in the particular case, add ten per centum penalty.

SAME.—*Exemplary Damages.*—Exemplary damages can not be awarded against unoffending sureties in a guardian's bond.

From the Wayne Circuit Court.

*T. J. Study, S. J. Peelle, S. C. Whitesell* and *W. A. Peelle,* for appellant.

*C. H. Burchenal* and *J. L. Rupe,* for appellee.

ELLIOTT, C. J.—The relator's complaint is founded upon a guardian's bond executed by James W. Boyd, as principal, and the appellant, as surety. The surety is the sole defendant; no process was served upon the principal.

It is said by appellant's counsel that the complaint is bad, "because it is alleged that the guardian was appointed by one power, and the exhibit shows that he was appointed by another." We think this objection is not well founded in fact. The averment in the body of the complaint is, that the guardian was appointed, upon petition, by the court, and the exhibit simply shows that the bond was approved by the clerk. If it be conceded that this was irregular, still the bond is not invalid, for our statute protects the beneficiaries in the bond of a guardian against such an irregularity. R. S. 1881, section 2516; *State, ex rel.,* v. *Britton,* 102 Ind. 214.

The second objection to the complaint is thus stated : " It is bad because it alleges that the guardian never made any inventory of the money or property in his hands, and never made any report to the court. Thus failing in the first twenty years to file an inventory, and in the last eighteen years to file an account, and showing, too, that the relator had arrived at the age of twenty-five years before this action

was brought." This position is not tenable. It is true that the statute of limitations begins to run during minority, and that the action must be brought within two years after the disability is removed, in cases where the full period has run. *Wright* v. *Kleyla*, 104 Ind. 223; *Barnett* v. *Harshbarger*, 105 Ind. 410; *Sims* v. *Gay*, 109 Ind. 501; *Walker* v. *Hill*, 111 Ind. 223; *Davidson* v. *Bates*, 111 Ind. 391; *City of Indianapolis* v. *Patterson*, 112 Ind. 344. But the cause of action for the conversion of the relator's money did accrue within twenty years from the time the action was instituted, for, although there may have been other breaches of the bond, the cause of action for the conversion of the money did not accrue when those breaches occurred, but accrued at a time long subsequent.

A guardian is under a duty to make reports as the law requires, but a breach of this duty does not give a cause of action for money unlawfully converted by him, and neither he nor his sureties can avail themselves of such a breach to defeat a ward, suing for money wrongfully appropriated, upon the ground that the statute of limitations began to run from the date of that breach.

This action is not governed by the provisions of the statute prescribing the time within which actions upon the bonds of public officers shall be brought. A guardian is not a public officer within the meaning of the second subdivision of section 293, R. S. 1881. *Owen* v. *State, ex rel.*, 25 Ind. 107.

The second paragraph of the answer avers that the cause of action did not accrue within five years before the action was brought. It is clear from what we have already said that this answer is bad.

The third paragraph of the answer avers that the cause of action accrued on the 15th day of August, 1880; that, at that date, the relator was twenty-one years of age, and that this action was not brought until the 27th day of August, 1885. This answer is, for the reasons already stated, clearly bad. The right of action for the conversion of the money

did not accrue until the relator attained his majority, on the 15th day of August, 1880, and this action was brought within six years from the time the cause of action accrued. Conceding that the case of *Jones* v. *Jones*, 91 Ind. 378, is rightly decided, still it does not apply here, for the action was brought within six years after the cause of action accrued. It is doubtless true, that, as decided in the case cited, and the cases of *Kidwell* v. *State, ex rel.*, 45 Ind. 27, and *Stroup* v. *State, ex rel.*, 70 Ind. 495, that the trust expired and the cause of action accrued when the relator became of age, but it does not follow from this, by any means, that he had only two years from that time within which to sue on the guardian's bond. We regard it as very questionable whether the decision in *Jones* v. *Jones, supra*, is not unsound in so far as it declares that the action on the bond must be brought within six years after the cause of action accrues, but it is not now necessary for us to pass upon that question, for here the action was brought within six years.

The fourth paragraph of the answer avers " that any and all sums of money received by James W. Boyd, as the guardian of the relator, were paid to him after his arrival at twenty-one years of age, by his guardian, and were paid out to others for the relator's schooling and board." This answer would be good if it showed a payment to the relator of the entire sum received, but this it does not do. For anything that appears, only a trifle may have been paid to him. In so far as the answer attempts to defeat the action by averring the payment of money for the ward's board and schooling, it is bad, for the reason that it does not show that the guardian had a right to pay out his ward's money for that purpose. It may well be that the ward could earn, and did earn, his own board, or that it was provided for him by those under a legal obligation to provide it. *Kinsey* v. *State, ex rel.*, 98 Ind. 351, and cases cited. The guardian must affirmatively show that the ward's estate justified the expenditure of the money for

which such a credit is claimed.    *State, ex rel.,* v. *Roche,* 91 Ind. 406.

The sixth paragraph of the answer alleges that Boyd removed to the State of Illinois on the 10th day of February, 1876, and that the relator was at that time seventeen years of age. The ninth paragraph is substantially the same as the sixth. The appellant assumes that these answers are good, because section 2525, R. S. 1881, provides that when a guardian removes from the State an action may at once be brought on his bond. We do not regard this position as maintainable. The guardian might have been sued on his bond when he removed from the State, but the failure of the ward to sue did not justify the guardian in failing to pay over the money in his hands to his ward when he became of age. This duty continued, notwithstanding the fact that suit might have been instituted when the guardian left the State. As the duty continued, there was no breach until the ward attained his majority. It was then that the present cause of action fully accrued. But, conceding that some cause of action accrued when the guardian removed from the State in 1876, yet this action was not barred, for it is not an action based upon the removal of the guardian, but upon his failure to pay over to his ward the money which belonged to him.

The eighth paragraph of the answer alleges that the guardian filed an affidavit prior to his appointment, wherein he stated that the real estate of his ward was worth $1,200, and was of the rental value of $65 ; that he had no personal estate ; that the clerk, by mistake, fixed the penalty of the bond at the sum of $2,400. Prayer that the mistake of the clerk be corrected. The pleading is not good. If there was a mistake it was a mistake of law, and such mistakes can not be corrected by the courts. The case is not like that of individuals making a computation of amounts, but the case is that of a public officer who has erred in discharging an official duty requiring the exercise of his judgment. But we hold that even if the mistake were of a character that could be

·corrected, the obligors are not in a situation to secure a correction. Having permitted the guardian to receive a large sum of money on the faith of the validity and adequacy of the bond, they can not be allowed to cause the ward loss by reducing the penalty. The conduct of the obligors and their long acquiescence preclude them from changing the bond to the injury of the relator. In our opinion the case is within the principle declared in *Lucas* v. *Shepherd*, 16 Ind. 368, and *Carver* v. *Carver*, 77 Ind. 498. The parties have acted upon the bond, have treated it as valid, and have not questioned the amount of the penalty, and it is too late to reduce the penalty at the ward's expense.

The appellant's counsel argue that, because Boyd was not served with process, the trial court erred in admitting any evidence against their client. We can not assent to this doctrine. The relator had a right to a judgment against the surety, although the principal was not served with process. The failure to get service on the principal does not defeat an action against the surety. The bond is joint and several and the relator might have sued the surety without joining the principal.

The guardian testified that he received the money with which the court charged the appellant, and this testimony fully supports the finding. The counsel assume that the guardian could not, under the pension laws, have received the amount he testified that he did receive, because the pension allowed would not equal that amount, but this argument assumes that no arrearages were collected by the guardian, and in the face of the positive testimony of the guardian that he did actually receive the sum he names, this assumption can not be maintained.

We are satisfied from an examination of the evidence that the damages were assessed on an erroneous theory and that there is an error in the amount of the recovery. It is conceded by appellee's counsel that the only breach relied on is the failure of the guardian to account to the ward when he

became of age. Under the rule as declared in *Baldridge* v. *State, ex rel.*, 69 Ind. 166, the penalty for the breach here relied on is the assessment of the amount due the ward with ten per centum on the amount found due. Under this rule it is not proper to compound the interest, but the true method is to compute simple interest, add it to the principal, and, should the court deem it proper in the particular case, add to this amount ten per centum. We incline to the opinion that the penalty of ten per centum prescribed is the exclusive one. but we do not now so decide. What we here decide is, that, as against the surety, and in such a case as this, the damages are to be assessed in the method we have indicated. In the *Matter of the Guardianship of Lara E. Thurston*, 57 Wis. 104, the court said: " The result of all the authorities seems to be that only in cases of fraud or flagrant breach of trust should the guardian be charged with compound interest." A similar statement was made in *Kinsey* v. *State, ex rel.*, 71 Ind. 32,40. In *Dufour* v. *Dufour*,28 Ind. 421, rests were made in computing interest in accordance with the chancery practice, but the court held that this was erroneous. It seems, therefore, that in such a case as this, where the guardian does not actually receive and appropriate interest, but simply keeps the money in his hands and refuses to pay it over to the ward when he becomes of age, the amount of the recovery is the principal, simple interest and the statutory penalty. We think, at all events, this rule, as in favor of a surety, is the one that should be applied to a case like this, where the sum received was comparatively small and was received in very small amounts, and where it does not appear that it could have been or was invested by the guardian. Each case must depend, in a great degree, upon its particular circumstances and we do not undertake to lay down any general rule, but restrict our decision to the case as the record presents it.

The courts are careful—and so they should be—to protect the interests of wards, but it is not to the interest of wards to

Peelle *v.* The State, *ex rel.* Hipes.

impose heavy penalties upon sureties.   If penalties are un-
certain and severe, men of financial ability will be slow and
reluctant to undertake as sureties for guardians.   While the
penalty should be heavy enough to fully reimburse the ward
and to move the guardian to faithfully perform his duty, it
should not be so severe as to punish sureties.   It is not the
object of the law to punish sureties, but to fairly compensate
beneficiaries.   A surety does not occupy the position of a
guardian who has committed a wrong, although he is respon-
sible for the loss occasioned by that wrong.

Appellee's counsel affirm that the trial court had authority
to award exemplary damages, but under the rule declared in
*State, ex rel.,* v. *Stevens,* 103 Ind. 55, this position can not be
maintained.   In that case it was held that a definite penalty
might be designated, but that an unrestricted right to assess
exemplary damages could not be conferred upon the courts.
In cases of this class, if there is a violation of law deserving
punishment, the guardian should be prosecuted for a crime;
if there is not such a violation, then his sureties should not
be punished.   It is doubtful whether, in any case, a surety
guilty of no personal wrong can be punished, for all that
should be required of him is that he make adequate com-
pensation to the injured party.

Judgment reversed.

Filed April 26, 1889.