**NORFOLK & WESTERN RAILWAY CO., Plaintiff,**

v.

**HARTFORD ACCIDENT & INDEMNITY CO., Defendant.**

**Civ. No. F 75–95.**

United States District Court,
N. D. Indiana,
Fort Wayne Division.

July 29, 1976.

Larry R. Fisher and Russell H. Hart, Lafayette, Ind., Edward L. Murphy, Jr. and Norman E. Baker, Fort Wayne, Ind., for plaintiff.

P. Michael Miller, Fort Wayne, Ind., for defendant.

## MEMORANDUM OF DECISION AND ORDER

ESCHBACH, Chief Judge.

This cause is now before the court on plaintiff's motion for summary judgment filed November 10, 1975 seeking judgment on its complaint, and on defendant's motion for summary judgment filed May 27, 1976 seeking judgment on its counterclaim. Because judgment on plaintiff's claim would necessarily be a judgment against defendant on its counterclaim, and vice versa, the respective motions for summary judgment will be treated as cross-motions for summary judgment as to both plaintiff's claim and defendant's counterclaim. As such, for reasons given below, plaintiff's motion will be granted and defendant's motion will be denied.

The facts are not in dispute. Plaintiff is a railroad corporation organized under the laws of Virginia with its principal place of business in that state. Defendant is an insurance company organized as a corporation under the laws of Connecticut with its principal place of business in that state. Both corporations are authorized to do business in Indiana.

On or about January 1, 1971, defendant (hereinafter referred to as the insurer) issued a policy of multiple liability insurance to plaintiff. The policy was issued by one of the insurer's agents in Saint Louis, Missouri. The scope of insurance included "all sums which the insured shall become legally obligated to pay as damages because of . . . bodily injury or . . . property damage to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use . . . of any automobile . . . ." Persons insured under this contract included not only plaintiff itself but also "employee[s] of the named insured." As elsewhere explained in the policy, the term " 'damages' includes damages for death and for care and loss of services resulting from bodily injury and damages for loss of use of property resulting from property damage."

During the life of the policy, a truck owned by plaintiff and being operated by one of plaintiff's employees was involved in a collision with an automobile operated by Norbert Herman. The collision occurred near Fort Wayne, Indiana. Suit was thereafter filed in an Indiana court by Mr. and Mrs. Herman against the insured (Norfolk & Western) and its employee. Trial was had before the Kosciusko Circuit Court, Civil No. C 73–8, and on June 5, 1975, the jury returned verdicts in favor of the Hermans totaling $67,000 in compensatory damages and $200,000 in punitive damages. Judgment was against both the insured and its employee. The insurer paid in full the compensatory damage award but refused to pay any part of the punitive damages. Ultimately, the insurer and the insured agreed to each pay one-half of the punitive damages, with a reservation of rights to determine coverage in court. The $200,000 amount was subsequently negotiated down to $187,500, with the insurer and the insured each paying $93,750. Plaintiff, the insured, now seeks payment of the $93,750 it paid; the insurer counterclaims for the $93,750 it paid. Jurisdiction under 28 U.S.C. § 1332 (diversity of citizenship) is properly shown.

I

In the exercise of its diversity jurisdiction, a federal court must apply the sub-

stantive law of the state in which it sits. *Erie R. R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The state's choice of laws rules are among the substantive laws to be thus applied. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

As a general statement, Indiana courts look to the law of the state with the most "intimate contact" with the transaction, although the validity of a contract will generally be determined by the *lex loci contractus*. *W. H. Barber & Co. v. Hughes*, 223 Ind. 570, 63 N.E.2d 417, 423 (1945); *Prudence Life Insurance Co. v. Morgan*, 138 Ind.App. 287, 213 N.E.2d 900, 904 (1966). Here, the validity and nature of the insurance contract are clear. The sole question is whether the insurer may be liable for an award of punitive damages against its insured arising out of an occurrence admittedly within the scope of the policy.

It is important to note that, to an extent, the policy incorporates the substantive law of every state in which the insured's activities may take place. Within the category of compensatory damages, which the contract concededly covers, it would not be argued that only such forms of recovery as may be had in Missouri (the state in which the contract was made) are recoverable under the policy. The policy anticipates that the insurer will respond to whatever damages are made available by the applicable law of the state in which the insured's tort liability arises. In this context, it is important to observe that the insurance contract here has nationwide effect and that it is a standard contract issued by Hartford through diverse insurance agents across the country. *Cf. Price v. Hartford Accident &*

*Indemnity Co.*, 108 Ariz. 485, 502 P.2d 522 (1972) (identical policy).

■ Whether resolved by application of the older conflicts concepts or by application of *Barber*'s "intimate contact" approach, the applicable law is that of Indiana. Under the older rules, the question is one of illegality of performance: may the contract be applied to an award of punitive damages. Under the *Restatement of Conflict of Laws* (1934), the relevant question is whether the performance would be legal according to the laws of the state in which the contract is to be performed. Section 347, Illustration 1, of the *Restatement* gives an example: "The purchase of grain futures is forbidden by the law of X but is legal by the law of Y. A agrees with B in X to purchase grain futures in Y. The bargain is legal." *Cf. Vandalia R. Co. v. Kelley*, 187 Ind. 323, 119 N.E. 257 (1917). Under the more modern approach, the relevant inquiry involves the relative interests of the various states in regard to the factual contacts involved. Especially in matters such as the insurability against a punitive damage award, the public policy of the state whose tort law imposes the punitive damage liability is most intimately involved. The extent to which a punitive damage award may be shifted away from the wrongdoer by means of insurance may undermine or frustrate the express purposes of allowing punitive damages in the first place. *Cf. Restatement (Second) of Conflict of Laws* § 6 (1971).

## II

■ The principal question, and the only question seriously in dispute,[1] is whether under the law of Indiana it contravenes

---

1. Of course, a threshold question may be posed, whether the language of the insurance contract admits of a construction which allows coverage for punitive damages. The contract covers "*all* sums which the insured shall become legally obligated to pay." The contract's explanation of the term "damages" is that it "includes" certain items, namely, that it "includes damages for death [etc.]." The explanation does not attempt to be all-inclusive, and it is in any event a circular definition. The contract nowhere mentions punitive damages, al-

though it was within Hartford's power to exclude such coverage. The policy unambiguously covers "all sums." Punitive damages are a form of damages; when liquidated by judgment, they are a "sum." Thus, this contract does not even present such an ambiguity as would call into play the rule that ambiguities in insurance contracts should be resolved in favor of the insured. *Freeman v. Commonwealth Life Ins. Co.*, 259 Ind. 237, 286 N.E.2d 396 (1972).

public policy for an insured to avoid liability for a punitive damage award by means of insurance. Although the question has arisen with increasing frequency in other states, no Indiana cases directly address the point. Determination of Indiana's public policy by reference to court decisions from other states would be highly inappropriate. There are sufficient guideposts among the reported Indiana cases, however, to allow a likely prediction as to an Indiana court's resolution of the question.

The nature of punitive damages in Indiana has been long established: "[W]henever the elements of fraud, malice, gross negligence or oppression mingle in the controversy, the law, instead of adhering to the system or even the language of compensation, adopts a wholly different rule. It permits the jury to give what it terms punitory, vindictive, or exemplary damages; in other words, it blends together the interest of society and of the aggrieved individual, and gives damages not only to recompense the sufferer, but to punish the offender." *Taber v. Hutson*, 5 Ind. 322, 324 (1854). The purpose of such a rule is to deter such oppressive conduct. *See Vernon Fire & Cas. Ins. Co. v. Sharp*, 53 Ind.Dec. 44, 52–53, 349 N.E.2d 173 (Ind.1976). Consistent with this view of punitive damages, Indiana courts do not allow recovery of punitive damages where the wrongdoer might be criminally liable for the same act, for to allow double punishment would violate the Indiana Constitution. *See Taber, supra*; *Nicholson's Mobile Home Sales, Inc. v. Schramm*, 330 N.E.2d 785 (Ind.App.1975).

Since the strong underlying purpose of the punitive damage award is to deter, the availability of insurance may totally undo the public policy of the state. Thus, "a person should not be permitted to insure against harms he may intentionally and unlawfully cause others, and thereby acquire a license to engage in such activity." *Home Insurance Co. v. Neilsen*, 332 N.E.2d 240, 244 (Ind.App.1975). So, also, on a guardian's bond, the surety is not obligated to pay a punitive damage award, although compensatory damages must be paid. *Peelle v.*

*State ex rel. Hipes*, 118 Ind. 512, 21 N.E. 288, 290 (1889) ("It is not the object of the law to punish sureties, but to fairly compensate beneficiaries. A surety does not occupy the position of a guardian who has committed a wrong, although he is responsible for the loss occasioned by that wrong.")

These cases reflect the concern that a punitive damage award may be shifted by insurance or surety, such that the deterrent effect of the award will be lost. To the extent, then, that the law imposes punitive damages upon an insured in order to shape or deter the insured's conduct, the insured may not avoid the penalty by means of insurance.

The rule against shifting the impact of a punitive damage award has an exception, however. An employer may be held liable for a punitive damage award against his agent when the agent acted within the scope of his employment. The exception was developed in terms of a corporation's freedom from criminal prosecution rather than in terms of any social policy favoring limited shifting of punitive damage awards. In an early case, *Morford v. Woodworth*, 7 Ind. 83 (1855), defendant (an individual) hired workmen to repair his cellar. Contrary to his directions, the workmen left a shaft or pit uncovered. Plaintiff fell into the unguarded hole and was injured. The Indiana Supreme Court, citing *Taber v. Hutson, supra*, held that it was improper to allow punitive damages against the employer on account of his workmen's tortious conduct: "[W]e think the defendant did nothing in this case which would make it proper to inflict damages upon him as an example to others in like case offending. He is shown to have acted with all due care and prudence, and had his directions been followed, the accident would not have occurred." 7 Ind. at 86. In *Jeffersonville R.R. Co. v. Rogers*, 38 Ind. 116 (1871), however, the rule was stated to be that "It is also well established that vindictive or exemplary damages may be given against corporations for the tortious and wrongful acts of their agents." *Id.* at 126. As authority for this proposition, the court cited the first

*Jeffersonville Railroad* case, 28 Ind. 1 (1867). In that case, however, the Indiana Supreme Court had held that it was possible for a corporation itself to act willfully and maliciously, as where "[t]he instructions governing subordinate employees and agents [are] devised in such utter disregard of the rights of others that obedience to them will result in palpable oppression and gross wrong to individuals." 28 Ind. at 7. There was no mention of vicarious liability for punitive damages.

The exception to the rule against shifting of punitive damages in the case of a corporate employer was explained thereafter as resting on the ground that since a corporation could not be held criminally liable, the assessment of punitive damages against it would not offend Indiana's prohibition against double punishment. *Indianapolis Bleaching Co. v. McMillan*, 64 Ind.App. 268, 113 N.E. 1019, 1020 (1916); *Baltimore & O. S. W. R. Co. v. Davis*, 44 Ind.App. 375, 89 N.E. 403 (1909). The rule is still applied: "a corporation may remain liable for punitive damages since it cannot be prosecuted for the criminal acts of its agents." *Nicholson's Mobile Home Sales, Inc. v. Schramm*, 330 N.E.2d 785, 791 (Ind.App.1975); *Bingaman v. Gordon Baking Co.*, 186 F.Supp. 102 (N.D.Ind.1960).

Of course, it does not necessarily follow that because a corporation is not subject to criminal prosecution it is therefore liable vicariously for punitive damages awarded on account of an agent's torts. The first *Jeffersonville Railroad* case properly recognized that a corporation may itself act willfully and maliciously, and, as to such conduct, punitive damages may be had in a proper case. Nonetheless, the exception exists, and upon this exception the plaintiff herein was held liable for punitive damages because of the acts of its agent.[2]

Where the corporation is strictly liable without fault, as where liability arises solely by operation of *respondeat superior*, the policy against shifting of punitive damages has already been put aside, and it would make no sense to revive that policy as between the innocent corporation and its insurer. Note that under Indiana law the corporation is permitted to shift a damage award incurred by operation of *respondeat superior* back onto the shoulders of the agent, for the agent must indemnify the corporation for its loss. *See, e. g., Biel, Inc. v. Kirsch*, 130 Ind.App. 46, 153 N.E.2d 140 (1958). The master is not viewed as a joint tortfeasor in such circumstances, even though he may be held to respond in damages for his agent's conduct, for between joint tortfeasors there is no right of indemnity. *See, e. g., Bituminous Cas. Corp. v. Hedinger*, 407 F.2d 655 (7th Cir. 1969) (applying Indiana law). In another setting, but serving as an analogy, when a manufacturer is held to be strictly liable for product defects, under Section 402A of the *Restatement (Second) of Torts* (1965), liability insurance should be fully available to allow shifting and dispersion of the damage award. *See* Comment *c* to Section 402A.

There is, accordingly, a distinction to be made in Indiana law between liability for punitive damages directly imposed and such liability when vicariously imposed. The former situation arises in cases similar to the first *Jeffersonville Railroad* case, 28

2. In *City of Gary v. Falcone*, 52 Ind.Dec. 580, 348 N.E.2d 41 (Ind.App.1976), the court of appeals held that a municipal corporation could not be liable for punitive damages arising from its agent's conduct. It gave four reasons for this decision: a large punitive damage award against a city would not deter the conduct of the agents; determining the amount of damages sufficient to deter would be impossible, since the city's "wealth" is not an appropriate criterion; it should be presumed that municipal officials will themselves punish offending agents; and in the case of a municipality the citizens (who are the beneficiaries of the deterrent) would themselves have to pay the punitive damage award. Except for the second reason, all the court's logic applies to private corporations as well. Most clearly, when the punitive damages are taxed against the corporation, the agent is relieved of the deterrent effect of the award; it may be presumed that corporations will discipline the agent for his willful misconduct; and to the extent that market conditions allow, the corporation is in a far superior position to pass on to consumers the ultimate incidence of the punitive damage award.

Ind. 1 (1867), in which the corporation itself is found to have acted maliciously or oppressively. The latter situation arises when the corporation, without itself being guilty of willful misconduct, is held to respond in damages for the intentional tort of its agent. In the former case, it would contravene public policy to allow the corporation to shift to an insurer the deterrent award imposed on account of the corporation's own wrongful acts; in the latter case, it would not be inconsistent with public policy to allow the corporation to shift to an insurer the punitive damage award when that award is placed upon the corporation solely as a matter of vicarious liability. The distinction is not a novel one: it has been fully considered and adopted by the courts of Florida. *Travelers Ins. Co. v. Wilson*, 261 So.2d 545 (Fla.App.1972); *Sterling Ins. Co. v. Hughes*, 187 So.2d 898 (Fla.App.1966); *see also Commercial Union Ins. Co. v. Reichard*, 404 F.2d 868 (5th Cir. 1968) (applying Florida law).

The Florida rule was developed in part from the concept that a corporation is itself capable of willful and malicious misconduct, independent of the misconduct of its agents and employees. The Indiana case of *Jeffersonville R.R. Co. v. Rogers, supra*, 28 Ind. 1 (1867), established this concept; the Indiana case was cited and quoted at length by the Florida Supreme Court when that state adopted the concept. *Winn & Lovett Grocery Co. v. Archer*, 126 Fla. 308, 171 So. 214 (1936). If a corporation could not act directly *for tort purposes* but could act only indirectly through its agents, then there could never be direct liability for punitive damages. All liability would be vicarious. But in accepting the concept of direct corporate action, the Florida courts established the groundwork for their present distinction between direct and vicarious liability for punitive damages. The Indiana courts have laid a similar groundwork for development, and the Florida rule of insurability follows naturally from these precedents.

Admittedly, in some cases the plaintiff's case may rest on alternative theories of direct and vicarious responsibility. In Florida, the problem of determining which theory (or theories) were in fact accepted by the jury may be resolved by use of special interrogatories. In Indiana, special interrogatories and special verdicts have been abolished. Ind. Trial Rule TR 49. This problem is not presented by the case at bar, however, since it clearly appears that the liability for punitive damages was imposed only on the basis of *respondeat superior*—that is, the damages were vicariously imposed—and not on the basis of any direct misconduct by the employer.[3]

### III

The only factual issue, then, is whether the insured (Norfolk & Western) was held liable in the state court trial on the basis of vicarious responsibility alone or whether its liability rested in whole or in part on its own misconduct. In this case it is quite clear that the insured was only vicariously liable.

Trial was had on plaintiffs' amended complaint, in which it was alleged that both the agent and the insured had committed willful, intentional torts. Before the case was given to the jury, however, the court struck all allegations of willful misconduct on the part of the insured; it carefully instructed that only the agent's willful mis-

---

**3.** Where an Indiana jury returns a punitive damage verdict against an employer, and where the complaint and instructions equally allow the verdict to rest on alternative theories of direct and vicarious liability, it appears it would be impossible for either the insurer or the insured to prove which theory was actually accepted by the jury. In an action such as this case, in which the insurer and the insured seek a determination of coverage, whichever party had the burden of proof would necessarily fail. On the other hand, the fact that the insurance consequences will be quite different if the award is direct or if it is vicarious may justify separate trials on the two theories. *Cf.* Ind. Trial Rule TR 42(B). If, in fact, it cannot be ascertained from a general verdict whether the jury accepted the theory of direct liability or of vicarious liability, or both, determination by separate trials commends itself. Of course, these issues are not presented for decision in this case, since the basis for the jury's verdict is quite evident.

conduct was in issue as a basis for punitive damages; and it instructed that the insured's liability for *negligence* could be direct or vicarious, but its liability for punitive damages could only rest on *respondeat superior.*

Accordingly, under Indiana law it is not contrary to public policy for Norfolk & Western to shift the punitive damage award to its liability insurer, and under the terms of the insurance contract between Norfolk & Western and Hartford, these damages were within the scope of coverage.[4]

### ORDER

Accordingly, plaintiff's motion for summary judgment is granted, and judgment is hereby entered for plaintiff on its complaint and against defendant on its counterclaim, and it is hereby ordered, adjudged and decreed that plaintiff have and receive of defendant the sum of $93,750.00. Defendant's motion for summary judgment is denied, and it is hereby ordered, adjudged and decreed that defendant take nothing by way of its counterclaim.

---

**4.** Even if Missouri law applied, the result would be the same. *See Ohio Cas. Ins. Co. v. Welfare Fin. Co.,* 75 F.2d 58 (8th Cir. 1934) (applying Missouri law), *cert. denied,* 295 U.S. 734, 55 S.Ct. 645, 79 L.Ed. 1682 (1935).