**COMMERCIAL UNION INSURANCE COMPANY,**
Plaintiff/Counterdefendant–Appellee,

v.

**RAMADA HOTEL OPERATING COMPANY,**
Defendant/Counterclaimant–Appellant.

No. 87–2971.

United States Court of Appeals, Seventh Circuit.

Argued April 21, 1988.

Decided July 19, 1988.

Peter G. Tamulonis, Kightlinger & Gray, Indianapolis, Ind., for defendant/counterclaimant-appellant.

Christine L. Olson, McKenna, Storer, Rowe, White & Farrug, Chicago, Ill., for plaintiff/counterdefendant-appellee.

Before WOOD, Jr. and KANNE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

Appellant Ramada Hotel Operating Company ("Ramada") appeals from the district court's grant of summary judgment for Commercial Union Insurance Company ("CUI") in this diversity matter.

I

This controversy has its origin in an incident that occurred on May 7, 1982 at the Indianapolis, Indiana, Airport Ramada Inn. On that day Robert Williams, a security guard employed by Ramada, became involved in an altercation on the motel property with Stephen Hall. Hall was injured and subsequently sued both Williams and Ramada in a state court tort action. Prior to trial, Hall dismissed Williams as a co-defendant and the case proceeded with Ramada as the sole defendant. The jury returned a verdict in Hall's favor against Ramada, awarding him $150,000 in compensatory damages and $600,000 in punitive damages. Hall refused a remittitur by the state trial court reducing the punitive damages award to $250,000 and a new trial was ordered. Hall appealed the state trial court's post-verdict actions. Before that appeal was heard, Ramada settled the Hall case and a related suit by a third party for a total of $400,000. $270,000 of that total settlement amount was paid to Hall. Hall's appeal was dismissed and no final

judgment was issued in the state court action.

At the time of the May 7, 1982 incident, CUI was the insurer under a commercial insurance policy held by Ramada. The Personal Injury Liability Insurance endorsement of the policy committed CUI to "pay on behalf of insured [Ramada] all sums which the insured shall become obligated to pay as damages." There is no doubt that Ramada was legally obligated to Hall for the full amount of the $270,000 in compensatory and punitive damages it paid to him in settlement of his state court action. Neither party claims otherwise. The dispute in this suit is between Ramada and CUI and is limited to the question of whether, under Indiana law, CUI can be held to its contractual obligation to pay on behalf of Ramada the portion of the $400,000 total settlement amount that has been attributed to punitive damages. The parties have stipulated that punitive damages figure to be $200,000.[1]

On September 9, 1985, CUI brought an action in the Indiana state courts seeking damages and a declaratory judgment that the stipulated $200,000 punitive damages amount was not covered by its policy with Ramada. Ramada removed the suit to federal district court. The thrust of CUI's suit is the claim advanced in its complaint that "[i]t is against [Indiana] public policy to insure against punitive damage liability such as the punitive damage liability assessed against [Ramada] in the lawsuit filed by Hall."

Before the district court, the parties entered an extensive stipulation of facts that included the jury instructions given during the original state court action by Hall against Ramada. Both CUI and Ramada moved for summary judgment. In addressing the motions for summary judgment, the district court cited with approval the analysis in *Norfolk and Western Railway Co. v. Hartford Accident and Indemn. Co.*, 420 F.Supp. 92 (N.D.Ind.1976), concerning the question of whether Indiana public policy precludes an insured from avoiding liability for a punitive damages award by means of insurance.[2] It agreed with the principle of Indiana law, embraced by the district court in *Norfolk and Western Railway*, that "a person should not be permitted to insure against harms he may intentionally and unlawfully cause others and thereby acquire a license to engage in such activities." *Home Insurance Co. v. Neilsen*, 165 Ind.App. 445, 451, 332 N.E.2d 240, 244 (1975).

The district court tacitly accepted Ramada's assertion, based on an interpretation of *Norfolk and Western Railway* and the underlying Indiana law, that no Indiana public policy is violated by insuring against punitive damages imposed vicariously on an employer for the actions of its employee. However, the district court was not persuaded that this case involves either "simple negligence" or "vicarious liability." It observed that the jury in the state court tort action against Ramada had been in-

---

1. At the time the settlement of Hall's suit was achieved Ramada and CUI each agreed to pay $100,000 of the total $200,000 punitive damages amount. They agreed further to litigate the issue of CUI's obligation to Ramada for those punitive damages.

2. In *Norfolk and Western Railway Co. v. Hartford Accident and Indemn. Co.*, 420 F.Supp. 92 (N.D.Ind.1976), the district court engaged in an extensive analysis of the relevant Indiana law pertaining to the issue of whether an insured may properly shift to an insurer the obligation to pay a punitive damage award for which it is liable. That analysis prompted the court to conclude:

> There is accordingly, a distinction to be made in Indiana law between liability for punitive damages directly imposed and such liability when vicariously imposed. The former situa-

tion arises in cases ... in which the corporation itself is found to have acted maliciously or oppressively. The latter situation arises when the corporation, without being guilty of willful misconduct, is held to respond in damages for the intentional tort of its agent. In the former case, it would contravene public policy to allow the corporation to shift to an insurer the deterrent award imposed on account of the corporation's own wrongful acts; in the latter case, it would not be inconsistent with public policy to allow the corporation to shift to an insurer the punitive damage award when that award is placed upon the corporation solely as a matter of vicarious liability.

*Id.* at 96–97 (citation omitted). *See also Grant v. North River Insurance Company*, 453 F.Supp. 1361, 1369–1370 (N.D.Ind.1978).

structed that an award of punitive damages was warranted only if it found, *inter alia,* that a "wrongful act ... willfully done in an abusive, wanton or oppressive manner," had transpired. In light of that instruction, the district court viewed the jury's verdict of punitive damages against Ramada as making inescapable the conclusion that Ramada's punitive damages liability with regard to the May 7, 1982 incident was based on its own direct action. Holding that Ramada "may not insure itself against its own intentionally malicious behavior," the district court entered summary judgment in favor of CUI.

## II

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment shall be rendered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." There is no dispute as to the material facts in this case. In granting CUI's motion for summary judgment, the district court relied on the stipulation of facts placed into the record by the parties. Therefore, our inquiry is limited to determining whether the district court erred in concluding that CUI is entitled to judgment as a matter of law. Our review is *de novo. See Equal Employment Opportunity Commission v. Sears, Roebuck & Co.,* 839 F.2d 302, 354 (7th Cir.1988). "[Appellate] review of a district court's summary judgment determination is *de novo,* and [the circuit court of appeals] appl[ies] the same standards as those applied by the district court." *See also Roman v. United States Postal Service,* 821 F.2d 382, 385 (7th Cir.1987).

In order to ensure clarity, we must precisely focus our inquiry. The May 7, 1982 altercation between Stephen Hall and Robert Williams has given rise to two separate and distinct court actions. The first was Hall's state court tort action against Ramada that resulted in a jury verdict, but no final judgment, awarding compensatory and punitive damages against Ramada. The second action is the present suit for declaratory judgment and damages brought by CUI against Ramada. Only the issues raised by CUI's cause of action are before us on this appeal. Thus, we are not concerned with, and will not address, the fairness of the state court trial, the correctness of the instructions made to the jury therein or the propriety under Indiana law of the jury's award of punitive damages against Ramada within the context of Hall's law suit.

The ultimate issue in the dispute before us is whether, under Indiana law, CUI is obligated by its insurance contract with Ramada to pay the $200,000 in punitive damages paid in settlement of Hall's state court tort action and a related suit by an unidentified third party. Resolution of that ultimate question of law may eventually require a determination of whether the direct liability/vicarious liability decision rule articulated in *Norfolk and Western Railway, supra,* accurately reflects controlling Indiana law as to the collection of payment by an insured for punitive damages. However, before the issue of the proper scope and application of *Norfolk and Western Railway* is reached, we must first evaluate the district court's resolution of a preliminary question of law upon which its decision to grant summary judgment for CUI turned. That question is whether, in light of the facts stipulated by the parties, Ramada's punitive damages liability can be said, as a matter of law, to have resulted from its own direct actions.

CUI stands in the position of an insurer whose policy unqualifiedly obligates it to pay all sums its insured (Ramada) becomes obligated to pay as damages. Ramada was legally obligated to pay the $200,000 in punitive damages. CUI's assertion that Indiana public policy voids its contractual obligation to indemnify Ramada for its punitive damages liability centers on the claim that the liability arose as a result of Ramada's own direct conduct. Accordingly, CUI can properly be assigned the burden of proving that assertion. *See Commercial Union Ins. Co. of N.Y. v. Reichard,* 404 F.2d 868, 869 (5th Cir.1968).

### III

Under Indiana law there is no right to punitive damages. *Travelers Indem. Co. v. Armstrong*, 442 N.E.2d 349, 362 (Ind. 1986). *See also Indiana and Michigan Elec. Co. v. Terre Haute Indus., Inc.*, 507 N.E.2d 588, 611 (Ind.App.1987). The purpose of punitive damages is to punish a wrongdoer whose actions have caused injury to another and to deter the wrongdoer from similar future conduct. *Indiana and Michigan Elec. Co.*, 507 N.E.2d at 611. In most circumstances, Indiana law precludes a jury award of punitive damages for acts of mere negligence. *Travelers*, 442 N.E.2d at 362 ("Punitive damages should not be allowable upon evidence that is merely consistent with the hypothesis of malice, fraud, gross negligence or oppressiveness. Rather some evidence should be required that is inconsistent with the hypothesis that the tortious conduct was the result of a mistake of law or fact, honest error of judgment, over-zealousness, mere negligence or other such noniniquitous human failing.") *quoted in Orkin Exterminating Co., Inc. v. Traina*, 486 N.E.2d 1019, 1023 (Ind.1986). *See also Lange v. B & P Motor Express*, 257 F.Supp. 319, 325 (N.D.Ind. 1966) (where, in discussing the negligent hiring theory of recovery in a case arising in Indiana, the district court observed: "[t]he law of negligence is concerned with the occasional failure to exercise reasonable and ordinary care. While such failure may subject a person to financial liability, it was never meant to penalize the wrongdoer.").

The Indiana Supreme Court has expressly held that "punitive damages may be awarded upon a showing of willful and wanton misconduct." *Traina*, 486 N.E.2d at 1023. *Traina* establishes that Indiana courts may impose punitive damages in order to penalize "conscious and intentional misconduct which, under the existing conditions, the actor knows will probably result in injury"; "conscious indifference," "heedless indifference" and "reckless disregard

for the safety of others"; "reprehensible conduct" or "heedless disregard of the consequences [of one's conduct]." *Id.* (citations omitted).

In applying this standard, the Indiana Supreme Court has made clear its view that in order for an award of punitive damages to be affirmed, a "reviewing court must find that under the circumstances known, the defendant 'subjected other persons to probable injury, with an awareness of such impending danger and with heedless indifference of the consequences.'" *Bud Wolf Chevrolet, Inc. v. Robertson*, 519 N.E.2d 135, 136 (Ind.1988) (quoting *Traina*, 486 N.E.2d at 1023).[3] In an action for damages in Indiana there is a presumption that the behavior of a defendant that triggers an award of compensatory damages does not rise to the level of misconduct necessary to support a claim of punitive damages. *Traina*, 486 N.E.2d at 1022–23 (holding there is "a presumption that the defendant's conduct that gave rise to the underlying claim and entitlement to compensatory damages was not inflicted with the obduracy [necessary] to sustain [a] claim that the defendant, *in the public interest*, should be penalized") (emphasis as in original). Finally, Indiana requires a plaintiff seeking punitive damages to prove by clear and convincing evidence that such a result is justified. *Travelers*, 442 N.E.2d at 363.

### IV

The preceding synopsis of Indiana law demonstrates that on summary judgment, Ramada can properly be held to be directly liable for the disputed punitive damages only if the record establishes as a matter of law that *its* conduct constituted more than an act of mere negligence. The district court tacitly acknowledged this rule of Indiana law when, after citing to the punitive damages jury instruction from the state court trial (number B–16), it concluded that "[t]he verdict [of the state trial

---

**3.** In *Bud Wolf Chevrolet, Inc. v. Robertson*, 519 N.E.2d 135, 136 (Ind.1988), the Indiana Supreme Court paraphrased its earlier holding in *Orkin Exterminating Co., Inc. v. Traina*, 486 N.E.2d 1019, 1023 (Ind.1986), as establishing that "punitive damages may be awarded upon a showing of willful and wanton misconduct, even absent malice, ill will or intent to injure."

court jury] was reached as a result of the direct action of Ramada" and pronounced that "Ramada may not insure itself against its own intentionally malicious behavior." The district court based its determination that Ramada's punitive damages liability resulted from its direct conduct solely on the inferences it drew from the state court jury instructions and verdict. Accordingly, in reviewing that determination, we too must focus upon the inferences that can permissibly be drawn from the punitive damages verdict of the state court jury in light of the instructions it was given.

In our effort to extrapolate the intermediate findings of fact made by the jury in reaching the verdict awarding punitive damages against Ramada, we must carefully examine the totality of the instructions provided it. Our objective is to determine if the jury's punitive damages award could only have been based on a direct liability theory. In making that determination we must also explore the possibility that the jury may have based the award of punitive damages on Ramada's liability for the intentional misconduct of its security guard Williams.

It must again be emphasized that we are not concerned with the correctness of the version of Indiana law reflected in the state trial court jury instructions. Rather, we must focus on the decision rules the jury was instructed to rely upon in deciding if Ramada should be held liable for punitive damages to Hall. It is those instructions, and the basis or bases they identified for assignment of punitive damages liability against Ramada, that will be our guides in interpreting the jury's punitive damages verdict. That the jury instructions may or may not have accurately reflected controlling Indiana law as to the punitive damages liability of an employer in Ramada's circumstance is of no consequence to our inquiry.

The district court correctly observed that this "case was submitted to the jury on a

theory of negligent retention." CUI's complaint for declaratory judgment and damages states at paragraph 4 that the compensatory damages in the underlying state court action "were based upon the theory ... that Defendant [Ramada] had been negligent in retaining [the security guard] as an employee after knowing that he was incompetent as a security guard."

Instructions B–14, B–27 and B–28 pertain to the negligent retention claim Hall brought against Ramada. As a group, these three instructions appear to accurately reflect Indiana law as to the negligent (hiring) retention theory whereby an employer may be held liable for an injury inflicted on a third party by one of its employees. Instructions B–14 and B–27 both refer to security guard Williams, but each makes reasonably clear that Williams was not a defendant and that the determination of whether Ramada was liable under the negligent retention theory was to be based only on Ramada's conduct.

All three negligent retention theory instructions are phrased in traditional negligence terms.[4] There is but one passage in those instructions, in instruction B–28, that employs anything other than simple negligence terminology. That sentence states:

An employer such as Ramada Inn who conducts an activity through employees may be subject to liability for harm resulting from the employee's conduct *if the employer is negligent or reckless* in retaining in its employ, an employee that the employer knows or in the exercise of reasonable care should know has a dangerous propensity which is likely to cause harm to others in view of the work and job responsibilities of the employee.

(emphasis added). But for the word "reckless," instruction B–28 employs only negligence theory terminology. It makes no reference to security guard Williams.

Study of the record establishes that Hall's state court action against Ramada

---

**4.** The state court jury was presented with four other instructions pertaining to the general negligence theory of tort recovery. Instruction B–9 defines the term "negligence." Instruction B–10 defines the terms "reasonable care" and "ordi-

nary care." Instruction B–11 addresses the topic of contributory negligence by the plaintiff. Instruction B–12 defines the term "proximate cause."

was based solely on a negligent retention theory of tort.[5] Nevertheless, because instruction B-14 obligated plaintiff Hall, as part of his negligent hiring claim, to prove that security guard Williams had committed an act of assault and battery against him, the jury was provided with five instructions pertaining to the intentional tort of assault and battery and the tort defenses of self-defense, assumption of risk and contributory negligence.

Instruction B-13 refers to the "assault and battery alleged to have been committed by defendant." Instruction B-26 purports to define the tort of assault and battery and informs the jury that it is a "wilful action."[6] Even though Williams had been dismissed as a defendant before trial, the next sentence of instruction B-26 informs the jury that "[i]f you find, therefore, that *defendant Williams* struc[k] the plaintiff, you may find that he committed an assault and battery on him." (emphasis added) Instruction B-26 then states: "Once the plaintiff proves that the assault and battery occurred, *the defendant* has the burden of proving *their* theory of self-defense. *The defendant* bears the burden of proving that the actions were justified." (emphasis added). Whether or not they accurately reflect Indiana law, these instructions provided the jury with the option of assessing punitive damages against Ramada based upon the willful and reckless conduct of the security guard.

Instruction B-19 is a second self-defense instruction. Its second paragraph states: "If you find that Mr. Hall first struck Mr. Williams [the guard], then Mr. Williams had the right to respond with such force in defending himself as appeared reasonably necessary under all the circumstances." Instruction B-20 (which is duplicated in instruction B-22) speaks to the defense of assumption of risk on the part of the plaintiff and refers in its first sentence to "the defendants." Finally, Instruction B-24 de-

clares: "*In an action for assault and battery,* contributory negligence on plaintiff's part is not a defense." (emphasis added).

During the state court trial, no objection was made to instructions B-13, B-19, B-20, B-24 and B-26. The state court action did not result in a final judgment. Given those facts, and in light of the narrow focus of our analysis, we need not concern ourselves with the propriety of the submission to the jury of the five instructions pertaining to assault and battery and three related defenses in a negligent retention cause of action. However, the fact that the jury was presented with a set of instructions relating to an intentional tort allegedly committed by security guard Williams is a relevant matter for consideration in evaluating the weight that should be given to the jury's decision to award punitive damages against Ramada.

Of particular significance is the fact that as a group, those five assault and battery instructions put the following information before the state court jury. First, there was a reference (in B-13) to "the assault and battery alleged to have been committed by the defendant" and a further statement (in B-24) that could well have lead the jury to believe that Hall's suit against Ramada as to punitive damages was "an action for assault and battery."

Most importantly, instruction B-26 refers to "defendant Williams" and B-20 speaks to "the defendants." The information conveyed to the jury by instructions B-13, B-20, B-24 and B-26 would have been completely appropriate in Hall's original cause of action against security guard Williams and Ramada. However, because Williams was dismissed as a defendant by Hall before trial, the reference to him as a defendant and the reference to "the defendants" takes on a dubious quality. That characteristic of the instructions put to the state court jury may well have led its members to believe or presume that the

---

5. While the record does not contain a copy of Hall's complaint, the parties make no reference to any theory of vicarious liability having actually been pled by Hall. Similarly, there is no reference in the jury instructions to any theory of recovery of punitive (or compensatory) dam-

ages against Ramada based on its vicarious liability for the acts of its security guard Williams.

6. We note that instruction B-26 appears actually to define only the intentional tort of battery.

actions of Williams and Ramada could be viewed jointly as the acts of "defendants" or "the defendant" for the purpose of assessing Ramada's liability to Hall. We cannot say for certain that the jury acted on that presumption in reaching the punitive damages verdict against Ramada. However, the very real possibility that it may have done so is a factor we must carefully consider.

Neither Ramada nor CUI addresses the facially incongruent nature of a punitive damages instruction being given to a jury that is asked to decide whether a defendant is liable due to negligent conduct. Instruction B–16 is the punitive damages instruction. It informed the jury that:

> Mere negligence alone on the part of a defendant is not sufficient to justify an award of punitive damages. Punitive damages may be awarded where a wrongful act is willfully done in an abusive, wanton or oppressive manner in conscious heedless disregard to rights of others and from which malice or an equivalent state of mind may be implied.

After defining the term "wanton or willful misconduct," instruction B–16 goes on to state:

> The plaintiff has the burden of proving by clear and convincing evidence that the conduct of the defendant constituted acts willfully done in an abusive, wanton or oppressive manner, in conscious heedless disregard for the safety of the plaintiff and from which malice or an equivalent state of mind may be implied.

Instruction B–16 draws no distinction between the actions of Ramada and the actions of Williams, the guard who attacked Hall. Like Instruction B–13, it refers only to "the defendant."

Even when viewed only in the abstract, instructions B–13, B–19, B–20, B–24 and B–26 are troublesome. Because they address the intentional tort of assault and battery and three defenses linked to that tort allegedly committed by Williams, they are arguably superfluous and relate only indirectly to the negligent retention cause of action pled by Hall against Ramada. Regardless, the true problem in the body of instructions presented to the state court trial jury becomes apparent when the five instructions pertaining to the intentional tort of assault and battery are juxtaposed with the punitive damages instruction, B–16. When that juxtaposition is made, the impossibility of discerning the actual basis upon which the jury founded its award of punitive damages against Ramada begins to reveal itself.

Instruction B–16 does not identify the "defendant" whose actions the jury was to evaluate in deciding if the type of willful actions "done in an abusive, wanton or oppressive manner" warranting an award of punitive damages had transpired. Nevertheless, it is clear that the only actionable direct action of Ramada actually addressed in the jury instructions was its purportedly negligent conduct in retaining security guard Williams in its employ. Instruction B–13 informed the jury that "[m]ere negligence alone on the part of a defendant is not sufficient to justify an award of punitive damages." The jury had not been instructed that Ramada could be held vicariously liable for punitive damages as a result of the conduct of its security guard. Therefore, unless it ignored instruction B–13, the jury could not have based the punitive damages verdict on Ramada's alleged negligent retention of Williams. *See Travelers*, 442 N.E.2d at 362.

There is but one thin thread to support the contention that, in light of the manner in which the jury was instructed, it could have based its punitive damages award on the direct actions of Ramada. That thread is found in the alternative form of syntax utilized in instruction B–28. That instruction informed the jury it could find Ramada liable to Hall for harm resulting from security guard Williams' conduct if it found that Ramada had been "negligent *or* reckless" (emphasis added) in retaining Williams in its employ. If the jury in fact decided that Ramada was liable under the negligent retention cause of action brought by Hall because its conduct in retaining security guard Williams was reckless, the

requisite finding of direct conduct by Ramada exceeding mere negligence would have been made. Although this view of the jury's decisionmaking process cannot be rejected out of hand, it is at least balanced by the possibility that the jury found Ramada's conduct to have been no more than negligent and based its punitive damages award against Ramada on its liability for the willful misconduct of security guard Williams.

But for the previously-discussed passage from instruction B–28, all of the jury instructions pertaining to direct acts of misconduct exceeding mere negligence focused on the act of assault and battery Williams purportedly committed against Hall. Instruction B–13 refers to the "defendant" in discussing the intentional tort of assault and battery and instruction B–26 refers to "defendant Williams." The focus of instructions B–13, B–19, B–20, B–24 and B–26 on the actions of security guard Williams and the express reference to "defendant Williams" in B–26 alone are sufficient to raise a real possibility that the jury may have believed it could award punitive damages to Hall based only on a finding that security guard Williams acted in a "abusive, wanton or oppressive manner . . .", thereby rendering Ramada vicariously, and not directly, liable for punitive damages, regardless of the theories alleged in Hall's complaint.

As observed earlier, the district court opinion in *Norfolk and Western Railway* does indicate that under Indiana law an employer can be held indirectly or vicariously liable for punitive damages arising from the tortious acts of its employees. 420 F.Supp. at 96–97.[7] The jury in the underlying state court action was not instructed on the vicarious liability theory for recovery of punitive damages. Nevertheless, in light of the curious mix of instructions that was allowed to be presented to

that jury, we cannot say as a matter of law that it did not base its punitive damages award against Ramada on a finding that Ramada was vicariously liable for the "abusive, wanton and oppressive" acts of its employee, Williams. Having reached that conclusion, we need go no further.

## V

We need not determine the propriety of the process whereby the jury verdict in the underlying state court action was reached or the correctness of the version of Indiana law upon which the instructions to the jury were based.[8] Neither are we required to address the legal effect that can be accorded a jury verdict that does not result in a final judgment. We are concerned here only with the inferences that can properly be drawn from the jury's verdict and the record before us.

Based on the foregoing analysis of the instructions made to the state court jury and the balance of the record, we are compelled to conclude that under the instructions presented to the state court jury, the jury may have found Ramada liable for punitive damages to Hall without finding that Ramada engaged in more than negligent conduct. That Indiana law may not allow that result to be reached is immaterial to our analysis. The point is that the uncertainty as to the basis for the jury's decision to award punitive damages against Ramada renders that verdict inadequate as the sole support for the inference that, as a matter of law, Ramada's punitive damages liability was based on its own direct misconduct. The inference drawn by the district court that the jury's verdict could only have been founded on Ramada's direct conduct is flawed.

The burden was on CUI to establish that Ramada's punitive damages liability was direct. It has failed to satisfy that burden.

---

7. Because the parties appear to concede this point, we need not address it further in this opinion.

8. To the extent the jury instructions to the state court jury were in error, if they were in error, both parties to the state court trial (Ramada and Hall) waived the error by settling their dispute and allowing the appeal to be dismissed.

Thus, we hold that the district court erred when it concluded as a matter of law that Ramada's punitive damages liability could only have been based on its own direct action.[9] Absent a reliable basis for holding that Ramada's punitive damages liability arose from its own direct conduct, the foundation for the district court's grant of summary judgment to CUI evaporates. The determination that as a matter of law CUI was entitled to summary judgment must also be deemed error and the district court must be reversed.

The judgment of the district court is reversed. This case reaches us in the posture of a grant of summary judgment. Therefore, we must remand in order to give CUI an opportunity to establish, if it can, consistent with Indiana law, that Ramada's punitive damages liability was based on its own direct conduct. If CUI cannot meet its burden of establishing that Ramada's punitive damages liability is direct and not vicarious as a matter of law, summary judgment for Ramada will be warranted. Accordingly, the case is remanded to the district court for whatever further proceedings it deems appropriate.

REVERSED AND REMANDED.

---

**9.** Neither the actual theories pled nor the theories under which the case was submitted to the jury are dispositive for our purpose. The underlying rationale of the applicable Indiana public policy makes it impermissible to cover with insurance an actor's *own misconduct* which constitutes the basis for punitive damages. To so permit would avoid the punishment of the wrongdoer. However, if the party against whom punitive damages are awarded is liable vicariously, for the acts of another, rather than for its own misconduct, then the rationale of the relevant public policy does not prevent insurance coverage regardless of the labels used or the theories underlying the liability. While a theory of negligent retention might involve such egregious misconduct in the retention as to make the retention a basis for punitive damages, no such showing as a matter of law has been made in this case. This is a determination we simply cannot make from the record before us.