Argued March 14, affirmed June 18, 1958

# PHELAN *v.* BESWICK
### 326 P. 2d 1034

*George M. Roberts* argued the cause for appellants. On the briefs were Roberts, Kellington & Branchfield, Medford.

*William M. Briggs*, Ashland, argued the cause and filed a brief for respondent.

Before PERRY, Chief Justice, and ROSSMAN, LUSK and SLOAN, Justices.

SLOAN, J.

This is, in effect, an action for slander by the plaintiff (respondent) against each of the two defendants (appellants). Two separate actions were filed and by stipulation of the parties were consolidated for trial. The actions were tried to a jury and it returned a verdict in each case for the plaintiff awarding $2,500 general damages and $2,500 punitive damages against each of the two defendants. The cases are likewise consolidated for this appeal.

The defendants assert three assignments of error. The first is directed to the admission of evidence presented by plaintiff concerning the wealth of the defendants. The second assignment asserts there was no substantial evidence of malice warranting the court submitting the question of punitive damages to the jury. The third complains that the court erred in failing to direct a verdict for each of the defendants. These assignments will be considered in inverse order.

Each complaint alleges, in substance, that on or about November 15, 1950, the respective defendants did falsely and maliciously utter in the hearing and

presence of one Howard Wiley and concerning the plaintiff: "Do you know that young lady down there is not only a thief but a liar?" or words to that effect and meaning. In the action against Sarah Beswick it is further alleged that she also stated: "But she is also discourteous." The complaints are otherwise identical. The complaints seek general and punitive damages and allege that each defendant is worth in excess of $100,000. Each answer denies these allegations and affirmatively alleges that during the month of January, 1950, the two defendants were the owners and entitled to and in possession of a city of Ashland water bond of the principal value of $1,000, payable to bearer. That sometime during the month of January, 1950, the defendants took such bond to the office of the city recorder and did there deliver the same to the plaintiff as deputy recorder; that she refused to give them a receipt therefor; that several months thereafter the defendants again went to the office of the plaintiff to inquire as to the payment of the bond, and it is alleged, that at that time they: "* * * were informed by the plaintiff that while she had received such said bond she did not know where it was." That thereafter defendants learned that plaintiff was covered by a fidelity bond and that one Howard Wiley was the agent who had written such bond. That on or about November 15, 1950, they called upon the said Howard Wiley at his office to determine if a claim could be filed upon plaintiff's bond for the alleged loss sustained by them, but that during the course of the conversation with said Howard Wiley they did not accuse the plaintiff as alleged in the complaint. The answer also affirmatively alleges the truth of the alleged defamatory words and that the communication with the said Howard Wiley was privileged. The af-

firmative allegations of the answer are traversed by the reply.

The evidence, viewed in the light most favorable to the plaintiff, is sufficient to establish that sometime during the month of January, 1950, the defendants took an interest coupon to the city offices and did there deliver it to the plaintiff. A few days thereafter a check was issued by the city in payment of the coupon, delivered to the defendants, and the check presented for payment and paid. That on May 8, 1950, the defendants returned to the plaintiff's office and there asserted to the plaintiff that they had, in fact, left a $1,000 bond with the plaintiff in January, and that it had not been paid. They demanded the return of the bond or its payment. This was denied by the plaintiff. On May 10 defendants again returned to the city offices and at that time conferred with the city treasurer, the city auditor, and plaintiff. This conference occurred in the office of the city recorder. This is a small office within the general city offices and has only partial partitions dividing it from the remainder of the office. There were numerous customers in the offices at that time paying water bills. Witnesses testified that at that time the defendants stated: "You are a thief; you got that bond; you give it to us." These words were loudly exclaimed and were clearly audible throughout the city offices and to the persons within the premises. These and similar words were repeated more than once on this occasion but there is some conflict in the testimony as to whether or not the words were used by one or both of the defendants.

Thereafter, about August 3, 1950, a conference was held attended by the two defendants, the city treasurer, the defendants' attorney, and the attorney for the city of Ashland. At this conference the defendants were

advised by both the city treasurer and the city attorney that the register of the questioned bond had been examined by the city officials and all bonds of the issue in question had been accounted for. Insofar as the city officials were concerned, there was no bond outstanding as had been claimed by the defendants. There was evidence that some three or four other conferences of a similar nature had occurred with the defendants and the city attorney and other city officials. On November 15 the defendants went to the office of Mr. Wiley and there used the words as alleged in the complaint in a loud voice sufficient to be heard by persons in that office other than Mr. Wiley.

■■■ It is substantially conceded and the case was tried on the theory that the utterances to Wiley were conditionally privileged. The jury was instructed accordingly. This required plaintiff to prove actual malice. *Grubb v. Johnson,* 205 Or 624, 289 P2d 1067. The language used was slanderous per se. Repetition of the charge is evidence of malice. *Peck v. Coos Bay Times Pub. Co.,* 122 Or 408, 259 P 307. It was, therefore, for the jury to determine if similar statements were uttered on other occasions and, if so, were they probative of a malicious intent? As indicated, there was evidence that the defendants had been informed more than once by responsible city officials that no bond of the issue of the bond alleged to have been given to plaintiff was unaccounted for. Consequently, it could be inferred that at the time the defendants uttered the words to Wiley they knew the accusation was false. There was conflict in the evidence concerning the statements made at the various conferences with city officials which only the jury could resolve and the defendants themselves state in their brief that the weight of the testimony of one witness, Lillian

Blume, was for the jury to determine. It must also be considered that malice is ordinarily a question for the jury. 53 CJS 342, Libel and Slander § 225. *Israel v. Portland News Publishing Co.*, 152 Or 225, 53 P2d 529, 103 ALR 470. There was no error in overruling the motion for directed verdict.

Accordingly, it is equally clear that the court was not in error in submitting the question of .punitive damages to the jury.

■ The right of the jury to receive evidence of, and give consideration to, the financial worth of the defendants is vigorously challenged by the defendants by their first assignment.

This court has never directly considered this question in a malicious slander or libel case. In other cases the court has recognized that it is proper to consider the wealth of the defendant where malicious act or conduct is present. *Pelton v. Gen. Motors Accept. Corp.*, 139 Or 198, 7 P2d 263, rehearing denied 139 Or 198, 9 P2d 128. In the early case of *Heneky v. Smith*, 10 Or 349, 45 Am Rep 143, this court sustained the admission of evidence concerning a plaintiff's financial condition in an assault case charging the defendant with maliciously shooting and wounding the plaintiff. In *Lamb v. Woodry*, 154 Or 30, 58 P2d 1257, also an assault case, the court stated: "The wealth of defendants is a matter to be considered upon the question of punitive and exemplary damages." The rule just quoted has general approval. 1 Jones on Evidence 4th ed, 272; 15 Am Jur 784, Damages § 346; 53 CJS 385, Libel and Slander § 266c. Am. Jur., supra, states it thus:

> "In most jurisdictions evidence of the financial condition of the defendant is admissible and may be considered by the jury in determining the amount

> of exemplary damages to be allowed and what amount of punishment would be inflicted thereby on the theory that the allowance of a given sum would be a greater punishment to a man of small means than to one possessing larger wealth."

And see the numerous cases there cited and extensive annotation at 34 ALR 3.

It is the view of this court that this is the proper rule and no error was committed.

Affirmed.